# In the United States Court of Federal Claims

Benjamin Wayne Latham, (Pro Se)

**Plaintiff(s),**

**v.**

**THE UNITED STATES,**

**Defendant.**

**Case No.** 25-127 C

**Judge** ____________________

## COMPLAINT

Your complaint must be clearly handwritten or typewritten, and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space, you may use another blank page. A fillable pdf is available at http://uscfc.uscourts.gov/filing-a-complaint.
If you intend to proceed without the prepayment of filing fees (*in forma pauperis* (IFP)), pursuant to 28 U.S.C. § 1915, you must file along with your complaint an application to proceed IFP.

1. **JURISDICTION.** State the grounds for filing this case in the United States Court of Federal Claims. The United States Court of Federal Claims has limited jurisdiction (*see* e.g., 28 U.S.C. §§ 1491-1509).

Plaintiff's claims fall within this Court's jurisdiction under *28 U.S.C. § 1491* (Tucker Act). Relevant here, *10 U.S.C.§ 1201* and *10 U.S.C. Chapter 61* govern military disability retirement benefits, recognized as "*money-mandating*" provisions. Which create legal obligation for United States to pay monetary benefits to qualifying Persons like plaintiff . This claim also implicates *10 U.S.C. § 1222*, which governs the process and requirements for Medical Evaluation Boards (MEBs) and Physical Evaluation Boards (PEBs), and *10 U.S.C. § 1552,* which governs corrections to military records. The Federal Circuit has affirmed that claims for disability retirement benefits do not accrue until the appropriate military board has denied or refused to hear the claim. *See Chambers v. United States, 417 F.3d 1218, 1224 (Fed. Cir. 2005)). A* claim may accrue when it's understood as permanent in nature and 30% service connected, Plaintiff was first denied BCNR in 2020 for TBI condition plaintiffs PTSD and migraines conditions are not brought forth in this case,saved for future APA review in district court) eye disorders and fibromyalgia are presented here too and accrued when diagnosed, service connected, and permanent in nature.

Plaintiff's case turns on Friedman v. US, 310 F.2d 381, 159 Ct. Cl. 1 (Fed. Cir. 1963), a cause of action does not accrue until a proper board has acted or declined to act. Plaintiff sought correction of his records through the BCNR in April 2020, specifically regarding his TBI as a "mandatory remedy". BCNR's Refusal to correct the errors and injustice became the final board determination, delaying the accrual of his cause of action. Additionally, accrual suspension rule delays the running of the statute of limitations if the claimant neither knew nor reasonably should have known of the claim's existence. Kinsey v.US , 852 F.2d 556, 557 (Fed. Cir. 1988); Banks v. US 741 F.3d 1268 , 1279–80 (Fed. Cir. 2014), "defendant has concealed its acts with the result that plaintiff *was unaware of their existence or it must show that its injury was"inherently unknowable' at the accrual date." Young v. US , 529 F.3d 1380, 1384 (Fed. Cir. 2008) quoting Martinez v. US , 333 F.3d 1295, 1319 (Fed. Cir. 2003)* (en banc)). The inherently unknowable test "includes reasonableness component." *Holmes v. US, 324 F.3d 1320 (Fed. Cir. 2003 ("While we have stated that the 'concealed or inherently unknowable' formulation of the test for accrual suspension is 'more common and more precise' than the knew or should have known' formulation, we do not view that statement as eschewing the reasonableness component of the 'inherently unknowable' prong of the test.")* Plaintiff could not have reasonably discovered Governments promise then failure to properly process his traumatic brain injury (TBI) claim through the Medical Evaluation Board (MEB) and Physical Evaluation Board (PEB) process, as in 2014 the military only focused on PTSD and migraines, or so Plaintiff was lead to believe. Despite obtaining his Official Military Personnel File (OMPF) from the National Personnel Records Center (NPRC) in 2016, Plaintiff's records contained no documentation of an MEB referral for TBI. This omitted record concealed existence of this right to Mandatory Board consideration. Plaintiff's discovery of relevant records occurred in late 2019 obtained documents through Freedom of Information Act (FOIA) request to Department of Veterans Affairs (VA) for a VA disability appeal. The discovered MEB document revealed for first time that he had been referred for MEB process for TBI but instead only PTSD and Headaches, so Plaintiff petitioned BCNR. legislative changes in 2019 to 10 U.S.C. § 1552(g)-(h) established new procedural protections as Congress created new "Liberal consideration" and requirement for BCNR and to "seek advice and counsel in the review from a psychiatrist, psychologist, or social worker with training on mental health issues associated with post-traumatic stress disorder or traumatic brain injury, these mandatory remedies the government put in place, and were not adhered to by BCNR. This case now Brought to avoid statute of limitations(6 years) and plaintiff and BCNR are at an impasse, this court has jurisdiction.

**2. PARTIES**

Plaintiff, Benjamin Wayne Latham, resides at 6408 Truxton Lane
(Street Address)

Raleigh, NC, 27616, (928) 278-7838
(City, State, ZIP Code) (Telephone Number)

If more than one plaintiff, provide the same information for each plaintiff below.

**3. PREVIOUS LAWSUITS.** Have you begun other lawsuits in the United States Court of Federal Claims? ☐ Yes ☒ No

If yes, please list cases:

**4. STATEMENT OF THE CLAIM**. State as briefly as possible the facts of your case. Describe how the United States is involved. You must state exactly what the United States did, or failed to do, that has caused you to initiate this legal action. Be as specific as possible and use additional paper as necessary.

The Plaintiff sustained multiple traumatic brain injuries (TBIs) during military service, including incidents in June 2012 (combat-related as determined by Combat-Related Special Compensation), September 2013, November 2013, and June 2014. Upon separation from service in January 2015, the Department of Veterans Affairs (VA) assigned the Plaintiff a 0% disability rating for TBI, preventing the accrual of a claim at that time. The Plaintiff appealed this rating. Plaintiff's fibromyalgia was ultimately diagnosed during the VA claims process as incidental to his military service in Southwest Asia (Gulf War) exposure areas, including Kuwait, Djibouti, and other classified locations. At his separation physical examination, the Plaintiff reported symptoms consistent with TBI, fibromyalgia, and vision disabilities, but these conditions were not addressed during his MEB/PEB. However During VA examinations, fibromyalgia was formally confirmed by medical opinion, resulting in a 40% disability rating assigned by the VA on July 8, 2020. Additionally, on March 4, 2019, the VA granted service connection for both Eye condition appealed by the Plaintiff, assigning a 30% disability rating retroactive to the day after his exit of service. These later VA determinations establish that Plaintiff meets the criteria for increased military retirement.

As these medical conditions prevent him from military service as a marine infantrymen. He cannot fire a rifle with eye Disabilities effectively, or do critical And physically demanding requirements of the responsibilities and tasks and operations of a Marine infantrymen With fibromyalgia, TBI, or eye conditions. Plaintiff's unit commander at the time of the MEB/ PEB wrote a statement how TBI precludes Continued military infantry service for plaintiff due specifically for TBI, and that's compelling. Upon leaving service, the Plaintiff was placed on Temporary Disability Retired List (TDRL) for post-traumatic stress disorder (PTSD) and migraines. However, Physical Evaluation Board (PEB) did not evaluate Plaintiff's TBI, vision disabilities, or fibromyalgia conditions during Integrated Disability Evaluation System (IDES) process. This failure to assess the full scope of the Plaintiff's injuries and unfitting conditions resulted in his improper classification and deprivation of his rightful level of disability retirement benefits. In 2020, Plaintiff submitted request to the Board for Correction of Naval Records (BCNR) seeking correction of military records to account for his TBI. The Plaintiff provided substantial evidence, including VA determinations and medical opinions confirming the service connection and severity of his TBI. However, the BCNR failed to correct the errors or provide relief. Plaintiff did not present claims regarding fibromyalgia or vision disabilities to the BCNR, they are presented here in the first instance. Plaintiff has been unlawfully denied the benefits he is entitled to under military retirement law. All claims at issue fall within six-year statutory period under 28 U.S.C. § 2501, as Plaintiff could not reasonably have discovered Defendants omissions until VA provided the necessary diagnoses, ratings, and service connection for Va claims process started during active duty and/or while TDRL for fibromyalgia and eye disorders.TBI condition had to be administratively Exhausted to BCNR to ensure the government made good and followed through on its board consideration it fixed itself To in the MEB referral process, and discovered later. yet the government's failure to properly evaluate Plaintiff's eye and fibromyalgia conditions were not distinguished during MEB proceedings, so initial BCNR consideration is not necessary. BCNR's refusal to correct its errors and injustice on the TBI issue, has resulted in the Plaintiff being deprived of his statutory right to increased disability retirement payments. Although Fibromyalgia and eye Conditions could be brought to BCNR first, because defendant made no promise for Board consideration of those Unlike the TBi, if plaintiff waits too long awaiting BCNR response, he would miss the statute of limitations of the Tucker Act. Further, plaintiff has bad faith with Defendant, Regarding the arbitrary, capricious, and abuse of discretion committed by BCNR. These are examples of factual and legal errors committed;

The Board for Correction of Naval Records (BCNR) failed to comply with statutory requirements designed to ensure fair and comprehensive consideration of claims involving traumatic brain injury (TBI), Under 10 U.S.C. § 1552(g)-(h), as amended by the 2020 National Defense Authorization Act (NDAA), the BCNR is obligated to seek advisory opinions from qualified mental health experts, such as psychiatrists, psychologists, or social workers with specialized training in trauma-related conditions, when reviewing claims involving post-traumatic stress disorder (PTSD) or TBI. Additionally, BCNR must apply a "liberal consideration" standard, which requires reviewing claims with heightened sensitivity to the effects of service-related trauma, ensuring claimants receive the benefit of the doubt when assessing whether PTSD or TBI contributed to adverse outcomes. In the Plaintiff's case, the BCNR failed to adhere to these statutory mandates. The advisory opinion provided by the BCNR addressing the Plaintiff's TBI claim did not identify the qualifications or expertise of the author. There is no indication that the opinion was prepared or reviewed by a mental health expert, as required by § 1552(g). Specifically, the qualifications, certifications, experience of the "senior medical officer" who prepared the opinion were omitted entirely, leaving it unclear whether the advisory opinion met statutory requirements. This procedural failure renders the opinion unreliable and noncompliant with federal law. The lack of proper expert involvement is particularly troubling in a case involving complex conditions like TBI, where specialized expertise is critical to ensuring an accurate evaluation. The deficiencies in the advisory opinion also raise broader concerns about the BCNR's decision-making process. Established precedent, such as *Mathis v. McDonald*, 834 F.3d 1347 (Fed. Cir. 2016), emphasizes that probative value of a medical opinion depends on the qualifications of the individual providing it. When the qualifications of an examiner are unknown, it is impossible for the reviewing body to evaluate whether opinion is based on appropriate expertise. This failure undermines the BCNR's reliance on the advisory opinion and deprives the Plaintiff of the meaningful and equitable review intended by Congress.Further compounding these procedural deficiencies is the BCNR's failure to apply the liberal consideration standard mandated by 10 U.S.C. § 1552(h). The liberal consideration standard requires boards to review claims with an understanding that service-related trauma, such as PTSD or TBI, may have contributed to adverse circumstances, including discharge characterizations or omissions in disability determinations. The purpose of this standard is to ensure that service members suffering from trauma-related conditions receive fair and equitable treatment, including the benefit of the doubt when evaluating evidence. In the Plaintiff's case, the BCNR ignored this critical statutory requirement, failing to consider whether the

Plaintiff's TBI contributed to the circumstances surrounding his disability retirement as his unit commander stated. The advisory opinion's deficiencies are further highlighted by the BCNR's improper reliance on a record review conducted by an unidentified individual rather than the firsthand assessments provided by the Plaintiff's treating physicians. Courts have consistently recognized the importance of treating physicians' opinions in cases involving medical disability. As explained in *Schisler v. Heckler*, 787 F.2d 76 (2d Cir. 1986), the opinions of treating physicians are entitled to extra weight because they are more familiar with a claimant's medical condition than are other physicians. The BCNR's failure to afford proper weight to the treating physicians' assessments, while relying on an inadequate and procedurally flawed advisory opinion, undermines the validity of its decision and violates well-established principles governing the evaluation of medical evidence. As recognized in *Doyon v. United States*, 58 F.4th 1235 (Fed. Cir. 2023), boards must evaluate claims involving trauma with "liberal consideration" to account for the profound effects of such conditions on service members' case and circumstances. BCNR's noncompliance with these statutory requirements, combined with its reliance on a inadequate advisory opinion, underscores the need for judicial intervention. Additionally the BCNR refused to hold a hearing, and the advisory opinion was on records alone Essentially making this a paper case. The BCNR's reliance on an advisory opinion based solely on a record review, coupled with its refusal to grant a requested hearing, constitutes a violation of fundamental due process principles under the Fifth Amendment. lack of in-person examination or personal contact with the decision-maker undermines the fairness and constitutional integrity of the process. Supreme Court held in *Califano v. Yamasaki*, 442 U.S. 682 (1979), "The one who decides must hear." This principle highlights the critical importance of direct engagement between the decision-maker and the claimant. Similarly, *Morgan v. United States*, 298 U.S. 468, 481 (1936), underscores that "[p]ersonal contact between the recipient and the person who decides his case" is a fundamental requirement of due process, ensuring that the decision-maker has a complete and fair understanding of the claimant's situation.In *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Court reinforced the necessity of procedural safeguards, holding that "Procedural due process requires a full hearing… since the individual interest in these benefits greatly outweighs the interest of the government." The refusal to provide such a hearing in this case disregards the claimant's right to present arguments and evidence in a meaningful and direct manner. Furthermore, in *Fuentes v. Shevin*, 407 U.S. 67 (1972), the Court emphasized "The right to a prior hearing has long been recognized… under the Fourteenth and Fifth Amendments."

Denying a hearing not only violates this well-established constitutional guarantee but also deprives the claimant of a critical opportunity to address deficiencies or inaccuracies in the record. The decision also contravenes the principles established in *Londoner v. Denver*, 210 U.S. 373 (1908), which emphasized that "[D]ue process of law as guaranteed by the Fourteenth Amendment requires that [a claimant] have the opportunity to support his objections by argument and proof at some time and place." This opportunity was denied when the BCNR rejected the request for a hearing, depriving the claimant of the ability to substantiate their objections to the advisory opinion or offer additional relevant evidence. The BCNR's failure to hold a hearing or provide personal engagement with the decision-maker is unconstitutional. It ignores the essential protections of due process, undermining the legitimacy of the decision and depriving the claimant of their right to be heard and to have their objections fairly considered. The BCNR made this a paper case by relying solely on documentary evidence and conducting a record review rather than providing an in-person medical examination or holding a hearing as requested. This approach eliminates the need for the customary deference typically afforded to factfinding based on live testimony, as outlined in United States v. General Motors Corp., 384 U.S. 127 (1966), and United States v. Singer Manufacturing Co., 374 U.S. 174 (1963). When findings are based on documents rather than oral testimony, the trial court's opportunity to evaluate witness credibility is limited, allowing appellate courts to review the record independently. Moreover, the BCNR's decision fails under the "substantial evidence" standard, which requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938). The BCNR excluded relevant evidence and failed to adequately consider the entirety of the record. As Pullman-Standard v. Swint, 456 U.S. 273 (1982), explains, findings based on incomplete or improperly reviewed evidence are subject to reversal or remand. In this case, the BCNR's reliance on a limited documentary record and its exclusion of critical medical and testimonial evidence sought to be provided rendered its findings inadequate. The findings of "ultimate fact" by the BCNR, which involve the application of legal standards to undisputed facts, are independently reviewable. As stated in Baumgartner v. United States, 322 U.S. 665 (1944), conclusions labeled as factual but derived from legal misapplications are not shielded from review. Similarly, in United States v. United States Gypsum Co., 333 U.S. 364 (1948), the Court emphasized that appellate courts may correct findings of fact where the entire record leaves a firm conviction that a mistake has been made. BCNR's refusal to hold a hearing and reliance solely on documentary

evidence transformed this into a paper case, fundamentally altering the scope of appellate review. findings of fact “depend peculiarly upon the credit given to witnesses by those who see and hear them." United States v. Yellow Cab Co., 338 U. S. 338, 338 U. S. 341 (1949); see also United States v. Oregon State Medical Society, 343 U. S. 326, 343 U. S. 332 (1952) As the record permits only one reasonable conclusion—that the applicant’s claims were improperly reviewed and significant evidence was excluded—a remand is unnecessary. Instead, effective judicial administration requires the appellate court to draw its own conclusions based on the full record, as supported by Levin v. Mississippi River Fuel Corp., 386 U.S. 162 (1967). The advisory opinion was based on inaccurate factual Retelling of the procedural and postural history of the claim and medical evidence. This courts sister court the U.S. Court of Appeals for Veterans claim held, “An opinion based upon an inaccurate factual premise has no probative value” Reonal v. Brown, 5 Vet. App. 458 (1993) cf. “If opinion based on an inaccurate factual premise, VA should discount it entirely.” Monzingo v. Shinseki, 26 Vet. App. 97 (2012). Though not Precedential on this Court, its principal is sound and the urged position is requested to be adopted by this court, that when an opinion by Military Board is based on inaccuracy, it must be stricken and not relied upon. The advisory opinion failed to grapple With and address the fact Mrs. Latham left her employment while Mr. Latham was still active duty to care for him after He suffered the latest TBi in June 2014 after all MEB and VA IDES exams had concluded. BCNR’s decision in this case, stating that the preponderance of evidence does not support the petition, fails to adequately address several critical issues and misinterprets the key facts. The Board’s summary overlooks significant procedural errors and misdiagnoses, particularly in relation to the improper TBI diagnosis, failure to separate PTSD /TBI symptoms, and the misapplication of requiring Clear and unmistakeable error “CUE” finding. BCNR’s claim that there is no, “objective evidence contemporary with the applicant’s enlistment..of fiscal and behavioral competence” is true, he Is presumed fit for service at but unless otherwise notated. See George v. McDonough, 596 U.S. 740 (2022) “statutory presumption of soundness that attached to his entry into military service. It also failed to follow [38 USC] 1111's command requiring the agency to prove… condition "was not aggravated by such service." Instead, the…relied on a very different set of rules of its own creation. BCNR ignores the fact that Mr. Latham’s TBI symptoms, including cognitive impairment, behavioral issues, and financial incompetence, were documented contemporaneously with his service and during the IDES process. The documentation clearly shows that his TBI had a substantial impact on his

behavior and functioning, which is directly relevant to placement on the TDRL and subsequent disability evaluations. The BCNR also dismisses in-service signs of the need for a caregiver, stating only appeared 2-3 months later. However, the VA records indicate that the need for Mrs. Latham to become Mr. Latham's official VA caregiver was discussed early as December 2014, within weeks of his discharge. The family caregiver application was submitted by February 6, 2015, showing that the issue was not only identified early but recognized as critical to his care. Additionally, the BCNR downplays the contributory role of TBI in Mr. Latham's impairment at the time of his placement on the TDRL. This assertion directly conflicts with the medical evidence available, including assessments from multiple physicians, which consistently linked his cognitive and behavioral issues to his TBI. The BCNR failed to account for the VA's recognition of the ongoing impact of TBI in Mr. Latham's life, a failure which should have been a significant factor in the review of his case. The BCNR also erroneously discounts the 2019 VA Decision Review Officer's (DROD) findings, stating that it lacked comprehensive evaluations or behavioral observations. However, the DROD relied on a number of medical assessments, including input from specialists who recognized the importance of distinguishing between TBI and PTSD symptoms. By relying on advisory opinion over these evaluations and continuing to conflate the symptoms of PTSD with those of TBI, the BCNR failed to give weight to In person examination and robust cogent evidence and apply the appropriate legal and medical standards. Further, BCNR's argued VA did not invoke the "Clear and Unmistakable Error" (CUE) standard in its review is abuse of Discretion. See Lang v. Wilkie, 971 F.3d 1348 (Fed. Cir. 2020), the CUE doctrine applies only to final decisions. In situations where no final decision has been made, there can be no CUE, any motion for CUE would have been required to be dismissed in its entirety as plaintiff appealed VA decisions timely... Lastly, BCNR's statement that "a higher disability rating could be justified" at the time of Mr. Latham's 2018 placement on the PDRL is a tacit admission that the earlier evaluations were incomplete and failed to fully assess his disability. This contradiction underscores the flaws in the BCNR's analysis and highlights the need for a more thorough review of Mr. Latham's case, taking into account all the relevant medical evidence and procedural errors that have affected his evaluations over the years. In conclusion, the BCNR's decision fails to adequately grapple critical issues as they have directly impacted Mr. Latham's ability to receive fair and accurate disability evaluation that would provide for higher military Disability retirement benefits provided for and arguably met under *10 U.S.C.§ 1201* and *10 U.S.C. Chapter 61*.

**5. RELIEF.** Briefly state exactly what you want the court to do for you.
Either grant summary judgement to award full 100% TBI PDRL rating, 40% fibromyalgia rating, and 30% eye disorder Rating and/or ensure that the BCNR corrects its errors and provides the Plaintiff with meaningful review Congress intended Specifically, the Court should order the BCNR to reevaluate the Plaintiff's claims with the proper application of the liberal consideration standard, consultation with qualified mental health experts, and appropriate consideration of the Plaintiff's treating physicians' opinions as well as provide the sought hearing.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 19 (day) day of January (month), 2025 (year).

[signature]
Signature of Plaintiff(s)

DECLARATION OF PATRICIA MUSILECK LATHAM IN SUPPORT OF PLAINTIFF'S COMPLAINT

I, Patricia Musileck Latham, hereby declare as follows:

1. In late 2019, during a review of unrelated Department of Veterans Affairs (VA) records requested to support my husband, Benjamin Latham's VA appeals, I discovered for the first time that my husband had been referred to the Medical Evaluation Board (MEB) for traumatic brain injury (TBI). Prior to this discovery, neither my husband nor I had any knowledge that the MEB referral was made or that the military branch had an obligation to properly consider TBI under the MEB process and eventually the PEB.

2. My husband and I were unaware of the existence of any implied contractual right requiring the MEB to evaluate TBI or its related residuals until late 2019. Upon discovery of this omission, we promptly researched the matter and petitioned the Board for Correction of Naval Records (BCNR) to resolve the error and injustice regarding the failure to properly consider TBI.

3. As Benjamin Latham has already reported to the court, I concur and agree with the factual history provided in his filings. I personally witnessed his decompensation while still in service, particularly in June 2014. This prompted me to leave my employment to care for him full-time as his condition worsened.

4. In November 2014, I inquired with the Wounded Warrior Battalion East Medical Officer about formally becoming Mr. Latham's Non-Medical Attendant (NMA) to provide the care he required. The Medical officer instructed me to apply for the VA Caregiver Program upon Mr. Latham's retirement.

5. After Mr. Latham retired from the Marine Corps, I submitted an application to the VA Program of Comprehensive Assistance for Family Caregivers (PCAFC) on February 6, 2015, just a few days after his separation from service. The application was accepted, and I was formally admitted as his designated family caregiver. Since that time, I have participated in the PCAFC program for nearly a decade, providing daily care and support to my husband due to his severe TBI residuals.

6. I have personally authored and assisted in the preparation of all appeals and claims for Mr. Latham, as his cognitive impairments from TBI prevent him from independently managing these matters.

7. Based on my direct involvement and knowledge, I attest that Mr. Latham has standing and is timely in pursuing this case. If the Court concludes otherwise, I respectfully request the opportunity to personally appear at a hearing to provide sworn testimony.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19 day of January, 2025.

[signature]

Patricia Musileck Latham
Designated Family Caregiver

A-7